UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COLLEGE RETIREMENT EQUITIES FUND, et al., | |
| Plaintiffs, | No. 22 CV 3845 |
| v. | Judge Manish S. Shah |
| THE BOEING COMPANY, et al., | |
| Defendants. | |

MEMORANDUM OPINION AND ORDER

This case is one of five separate securities-fraud cases filed in Chicago federal and state courts against Boeing and its executives related to crashes of 737 MAX airplanes in 2018 and 2019. Plaintiffs filed in this district in July 2022 because Boeing was headquartered in Chicago. Boeing moved its headquarters from Chicago to Virginia in the third quarter of 2022. After another incident occurred on an Alaska Airlines 737 MAX flight in January 2024, a class action was filed in the Eastern District of Virginia. Plaintiffs amended their complaint to include the same allegations as those in the Virginia case. They now seek to transfer this case to the Eastern District of Virginia.

I.   **Background**

In July 2022, plaintiffs filed this case against Boeing and its executives based on alleged fraudulent misrepresentations related to two crashes of Boeing's 737-8

MAX airplanes in 2018 and 2019. [1].[1] Four other securities cases related to the same crashes were filed in federal and state courts in Chicago. *In re The Boeing Co. Aircraft Sec. Litig.*, No. 1:19-cv-2394 (N.D. Ill.) (a putative class action); *Value Recapture Partners LLC v. The Boeing Co.*, No. 1:23-cv-16550 (N.D. Ill.); *Alger Cap. Appreciation Fund v. The Boeing Co.*, No. 2022-L-002342 (Ill. Cir. Ct. Cook Cnty.); *PWCM Master Fund Ltd. v. The Boeing Co.*, No. 2022-L-009328 (Ill. Cir. Ct. Cook Cnty.).

Plaintiffs say that they filed this case in the Northern District of Illinois because Boeing was headquartered in Chicago at that time. [56] at 12 n.3. Boeing announced that it would move its headquarters to Arlington, Virginia in May 2022, and relocated by the third quarter of 2022. [57-2]; [57-3].

Boeing's motion to dismiss plaintiffs' amended complaint was granted in part and denied in part in September 2023. [36]. The case was stayed in October 2023, pending a decision on another motion to dismiss in the Chicago class action. [38].

While this case was stayed, a class action was filed against Boeing in the Eastern District of Virginia in January 2024. *In re the Boeing Co. Sec. Litig.*, No. 1:24-cv-151 (E.D. Va.). The Virginia class action focused on the period after the 737 MAX crashes and new allegations about Boeing's safety culture in the wake of an accident on a 737 MAX Alaska Airlines flight. *See* 1:24-cv-151 (E.D. Va.), [43].

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. When a document has numbered paragraphs, I cite to the paragraph, for example [54] ¶ 1.

2

The stay in this case was lifted in October 2024. [45]. Plaintiffs filed a second amended complaint in December 2024, adding the same allegations as those in the Virginia case. *See* [54] ¶¶ 371–487; 1:24-cv-151 (E.D. Va.), [43].

Plaintiffs now seek to transfer this case to the Eastern District of Virginia. [55].

## II.  Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). District courts "adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). "The statute permits a flexible and individualized analysis," and district courts can "look beyond a narrow or rigid set of considerations in their determinations." *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). When a plaintiff moves to transfer venue, the plaintiff's choice of forum is afforded less weight, and generally, a change in circumstances is required to justify the transfer. *See, e.g., Craftwood II, Inc. v. Generac Power Sys., Inc.,* No. 17-C-4105, 2020 WL 13602760, at *2 (N.D. Ill. Mar. 11, 2020); *Qurio Holdings, Inc. v. DIRECTV, LLC*, No. 14-cv-7502, 2015 WL 1943278, at *3 (N.D. Ill. Apr. 29, 2015).

## III.  Analysis

The parties do not dispute that this case "might have been brought" in the Eastern District of Virginia. [56] at 11–12; *see* [62]. Section 27 of the Securities Exchange Act permits "[a]ny suit or action to enforce any liability or duty created by

3

this [Act] or rules and regulations thereunder" to be "brought in any such district or in the district wherein the defendant is found or is in an inhabitant or transacts business." 15 U.S.C § 78aa(a). Boeing transacts business in the Eastern District of Virginia and has been "found" there and an "inhabitant" since it moved part of the company there in 2017. [57-6]. In May 2022, Boeing announced it would move its global headquarters to Arlington, Virginia, and did so in the third quarter of 2022. [57-2]; [57-3]. Plaintiffs could have filed this case in the Eastern District of Virginia in anticipation of Boeing's move.

Boeing argues that plaintiffs have not shown that there was a "change of circumstances" that warrants transfer. [62] at 10–11. I agree. Although plaintiffs filed their case before Boeing moved its headquarters to Arlington, Boeing's intention to do so was public at the time they filed, and plaintiffs admit that they could have filed in the Eastern District of Virginia even before Boeing's headquarters relocated there. *See* [56] at 11–12. But even if there were a change of circumstances, plaintiffs have not shown that the convenience of parties and witnesses or the interest of justice warrant transfer.

### A. Convenience

The party seeking transfer bears the burden of showing that the proposed transferee forum is "clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986). In evaluating the convenience of parties and witnesses, "courts generally consider the availability and access to witnesses, and each party's access to and distance from resources in each forum." *Rsch. Automation*, 626 F.3d at 978.

4

Plaintiffs argue that most of the parties and witnesses no longer have any connection to this district. [56] at 12. They claim that they filed in this district because Boeing was headquartered in Chicago, not because it was convenient for plaintiffs. *Id.* at 12 n.3. Because two of plaintiffs' three investment advisers are headquartered in New York, plaintiffs say that most of their witnesses will likely hail from New York, making Virginia a more convenient district. *Id.* at 12. But the investment adviser for eight of the twelve plaintiffs has its main office in Chicago, not New York. [54] ¶¶ 36–43. Further, a marginally shorter flight for plaintiffs from New York does not "greatly diminish" inconvenience. *See Einhaus v. Textmunication Holdings, Inc.*, No. 17-C-4478, 2018 WL 398258, at *3 (N.D. Ill. Jan. 12, 2018). Other than the New York based investment advisers, plaintiffs don't explain how this district is inconvenient to them.

Plaintiffs argue that the Eastern District of Virginia is overwhelmingly more convenient for Boeing because it is headquartered in that district. [56] at 13. Boeing disagrees. [62] at 12. Plaintiffs assume that Boeing's employees knowledgeable about its alleged fraud are based in Virginia because of Boeing's headquarters, [56] at 13, but this is unsubstantiated, and according to Boeing, false, [62] at 13. Boeing's operations span the country, and it has maintained a presence in Chicago despite moving its headquarters. *See* [57-2]. Plaintiffs' core allegations concern Boeing Commercial Airplanes, the unit that "develops, produces, and markets commercial airplanes worldwide," including the 737 MAX at issue in this case, which is based in Seattle. *See* [54] ¶ 45; [57-2]. Individual defendants, such as former CEO Dennis

5

Muilenburg and former CFO Gregory Smith, resided in Illinois at the time of their separation from Boeing. [64] ¶¶ 4–5. Defendants David Calhoun and Brian West also do not reside in Virginia. *Id.* ¶¶ 6–7. That these defendants are represented by Boeing's attorneys does not mean that they are more connected to the Eastern District of Virginia.[2] *See Harris v. Illinois*, No. 09-cv-3071, 2010 WL 145790, at *5 n.1 (N.D. Ill. Jan. 12, 2010) ("The convenience and location of counsel have never been accorded weight in a transfer analysis."). The Eastern District of Virginia is not clearly more convenient for defendants.

Plaintiffs argue that, based on public information, none of the non-party witnesses appear to reside in Illinois or to be subject to compulsory process in this district. [56] at 14. Plaintiffs guess that Virginia will be more convenient for those witnesses because whistleblowers and former employees have travelled to Washington D.C. to testify before Congress, and alleged misconduct occurred at Boeing's production facility in South Carolina. *Id.* Such speculation does not support transfer. The absence of a relationship with Illinois and previous travel to Washington D.C. does not show connections to Virginia or that witnesses are subject to compulsory process in the Eastern District of Virginia. Indeed, it appears no non-party witnesses reside in Virginia. *See* [64] ¶¶ 8–17. And while Virginia may be more convenient for South-Carolina-based witnesses, it would not be for witnesses near Boeing's Washington facilities. *See id.* ¶¶ 3, 8–10, 12–14, 16. Plaintiffs also "never

---

[2] Similarly, Boeing's representation of former Boeing employees does not convince me that these non-party witnesses have a stronger connection to the Eastern District of Virginia. *See* [56] at 13–14.

6

go[] beyond vague generalizations in making" their claim that none of the non-party witnesses appear to be subject to compulsory process in this district. *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989). Plaintiffs, as the party seeking transfer, bear the burden to specify the key witnesses to be called and describe their testimony. *See id.* Plaintiffs have not identified non-party witnesses they plan to call but cannot because these witnesses are beyond this court's reach, nor the materiality of that testimony. *See id.* at 1293–94. Further, plaintiffs do not explain how taking depositions in witnesses' locations does not ameliorate at least some of their convenience concerns. Plaintiffs have not shown that the Eastern District of Virginia is clearly more convenient for non-party witnesses.

Other convenience considerations "include the location of material events and the relative ease of access to sources of proof." *Rsch. Automation*, 626 F.3d at 978. Plaintiffs argue that many of the material events at issue in this case took place in the Eastern District of Virginia after Boeing relocated its headquarters to Arlington. [56] at 15. In a securities fraud case, the material events are the "creation and dissemination of the" allegedly false statements in the complaint. *Ballotti v. Oppenheimer Funds, Inc.*, No. 10-C-50116, 2011 WL 13382871, at *3 (N.D. Ill. Feb. 23, 2011). Many of the material events at issue here—statements made in the months following the 2018 and 2019 crashes—took place before Boeing's headquarters relocated to Arlington in 2022. These statements were made when Boeing's communications teams were in Chicago and Seattle. *See* [54] ¶¶ 488–680, 776–92. And plaintiffs' allegations about Boeing prioritizing profit over safety occurred at

7

Boeing's commercial aircraft unit headquartered in Seattle, its Renton factory, and its South Carolina facility—not Virginia. *See, e.g.*, *id.* ¶¶ 151–56, 385–86, 388–89, 399, 402, 416–31, 466–70, 818, 846.

Virginia may be the "most recent 'location of material events,'" [56] at 15, but the situs of material events does not automatically change simply because a party subsequently moved to a different location. *See Fetter v. Fetter*, No. 4:23-cv-00019-SEB-KMB, 2023 WL 4269855, at *4 (S.D. Ind. June 29, 2023) (finding defendant's subsequent move to another state was not enough to shift the situs of material events). This factor is neutral at best and does not favor transfer. *See Kadiyala v. Pupke*, No. 16-C-3549, 2017 WL 2350454, at *6 (N.D. Ill. May 30, 2017) ("The material events took place both in Illinois and Florida, making that factor neutral.").

Plaintiffs argue that all of Boeing's documents and records are accessible from its global headquarters in Arlington, so the "relative ease of access to sources of proof" favors transfer. [56] at 14. But plaintiffs do not support this assertion. Boeing is not a small company with one location—it's unreasonable to presume that sources of proof are concentrated near Boeing's headquarters. *Cf. In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003). Plaintiffs also "offer[] no reason to think that discoverable documents cannot efficiently be produced electronically, regardless of whether this suit is litigated in Chicago" or Virginia. *See Edke v. Belden Inc.*, No. 21-cv-0813, 2021 WL 3022322, at *4 (N.D. Ill. July 16, 2021).

Plaintiffs have not carried their burden to show that the Eastern District of Virginia is a clearly more convenient forum for parties and witnesses or access to

8

sources of proof. *See, e.g., id.* at *5; *Hirst v. SkyWest, Inc.*, 405 F.Supp.3d 771, 778 (N.D. Ill. 2019). Considering Boeing's and witnesses' national spread, the districts appear equally inconvenient. *See Nat'l Presto Indus.*, 347 F.3d at 665 ("When plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience."). In the absence of any clear showing from plaintiffs, the private interest factors do not favor transfer to any significant degree.

B.     **Interest of Justice**

The "interest of justice" relates to the "efficient administration of the court system" rather than the private interests of the parties. *Rsch. Automation*, 626 F.3d at 978. This inquiry carries greater weight than the concern for convenience and "may be determinative . . . even where the convenience of parties and witnesses points toward the opposite result." *Id.* Courts consider several factors, such as (1) "docket congestion and likely speed to trial" in the forums; (2) the desirability to resolve related litigation in the same forum; and (3) a community's interest in resolving and relationship to the controversy.[3] *See In re Ryze Claims Sols., LLC*, 968 F.3d 701, 708 (7th Cir. 2020); *Coffey*, 796 F.2d at 221 ("[R]elated litigation should be transferred to a forum where consolidation is feasible.").

The first factor favors plaintiffs. The Eastern District of Virginia is one of the speediest districts to move a case from filing to disposition or trial. *See* [57-8] at 26;

---

[3] Another factor considered is "each court's relative familiarity with the relevant law." *Ryze*, 968 F.3d at 708. Relative familiarity with applicable law "concerns diversity cases and governing state law." *Tri3 Enters., LLC v. Aetna, Inc.*, No. 11-C-3253, 2011 WL 2550736, at *4 (N.D. Ill. Jun. 24, 2011) (citing *Stewart*, 487 U.S. at 34). Plaintiffs bring federal claims, so this factor is irrelevant here.

9

[67-3] at 26. Plaintiffs argue that there will be no prejudice to defendants or delays because the matter "will proceed more expeditiously, cutting down the time and expense of litigation for both parties." [56] at 17. Boeing argues that the districts' relative speed is inapposite because "this case is anything but 'average' litigation." [62] at 19 (citing *Hirst*, 405 F.Supp.3d at 779 n.7). But complex litigation is far more likely to consume both private and judicial resources, making speedy resolution even more desirable. This factor weighs in plaintiffs' favor.

The second factor is murkier—there are related cases in both forums. Plaintiffs argue that transferring this case to the Eastern District of Virginia is expedient because this case is so closely related to the Virginia class action that discovery can be coordinated. [56] at 18; [67] at 11–12. Boeing argues that transferring this case will lead to inefficiencies because it will no longer be coordinated with the Illinois cases. [62] at 16–18.

According to plaintiffs, their amended claims go beyond the "misrepresentations regarding Boeing's 737 MAX airliner" alleged in the Chicago cases, and now include Boeing's "corporate culture, disregard for safety and quality controls, and regulatory non-compliance," on which the Virginia class action focuses. [56] at 18. Boeing argues that those themes were present in the case already. [62] at 17. I agree. Despite arguably sharing more in common with the Virginia class action, plaintiffs' allegations about Boeing's "purposeful blindness to critical negative information coming from its employees, and ultimately its unsustainable and disastrous pursuit of short term profit over long term safety" were equally present in

10

their original complaint. *See* [54] ¶ 1; [1] ¶¶ 2, 50–60, 285–89. Plaintiffs have not abandoned their previous allegations rooted in the 2018 and 2019 crashes that are also alleged in the Illinois cases. *See* [54] ¶¶ 50–311. And plaintiffs' new allegations are not so radical that this case would no longer benefit from coordination with the Illinois cases.

While transfer to the Eastern District of Virginia could permit coordinated discovery, this case is at a different stage than the Virginia class action. Discovery in the Virginia case will conclude on May 16, 2025. 1:24-cv-151 (E.D. Va.), [154]. This case is still at the pleading stage, more closely aligned with Chicago class action. *See Value Recapture,* No. 1:23-cv-16550, [31]. A complete factual record in the Virginia class action may speed up discovery here, but plaintiffs admit that they will still need to seek "additional discovery that is necessary and unique to this case." [67] at 12. Plaintiffs would have a very small window to coordinate with the Virginia case to avoid duplicative discovery considering the looming deadline. I am not convinced that coordinating discovery with the Virginia class action will be more efficient than coordination with the Illinois cases. Nothing prevents the parties from coordinating and cooperating with the parties in the Virginia case under the auspices of this Illinois case.

Plaintiffs also argue that transfer will ensure that there are no inconsistent rulings on issues that the Eastern District of Virginia has already decided. [56] at 18. This argument cuts both ways considering that this court "has already been considering many of the same facts and legal issues" and continues to address

11

overlapping issues with the Chicago actions. *See Ward v. Soo Line R.R. Co.*, No. 15-C-5931, 2015 WL 6164974, at *2 (N.D. Ill. Oct. 20, 2015). The desirability to litigate this case alongside related cases is a neutral factor.

Community interest in resolving and involvement in this dispute also does not compel transfer. Plaintiffs argue that because Boeing's global headquarters are in the Eastern District of Virginia, its community bears a far stronger relationship to the dispute than this district. [56] at 18; *see Bowen v. Groome*, 2011 WL 13099036, at *1 (S.D. Ill. May 3, 2011) ("[D]efendant's home forum always has a strong interest in providing a forum for redress of injuries caused by its citizens."). According to plaintiffs, this district has no cognizable interest in providing redress against its former citizens. *See* [67] at 11. Plaintiffs allege that Boeing engaged in the alleged misconduct when based in Virginia. [56] at 8–9 (citing [54] ¶¶ 332–42; 406–10, 484, 486–87). But this case also concerns matters that occurred when Boeing was headquartered in Chicago. *See* [54] ¶¶ 488–680, 776–92. Boeing's alleged actions were split between Chicago (2018–2022) and Virginia (2022–2024). *See* [54] ¶ 24; [57-2]; [57-3]. Despite Boeing's departure from Chicago, this district maintains its interest in providing redress for harms Boeing allegedly perpetrated while it was here. *See Santore v. Swaminathan*, No. 17-cv-5742, 2018 WL 1124414, at *8 (N.D. Ill. Mar. 1, 2018) ("Illinois has an interest in protecting its citizens from fraud, while [defendant's home district] has an interest in ensuring that those who conduct business in the state receive a fair trial.").

The interest of justice does not favor transfer.[4] While the Eastern District of Virginia may be able to address this case at a faster pace, that one factor is not so weighty to tip the scales when all other factors are neutral and when the Eastern District of Virginia is not a clearly more convenient forum.

## IV. Conclusion

Plaintiffs' motion to transfer, [55], is denied.

ENTER:

Manish S. Shah
United States District Judge

Date: April 25, 2025

---

[4] Boeing argues that plaintiffs are forum-shopping because of a plaintiff-friendly ruling in the Virginia case. It would be contrary to the interest of justice to encourage the lawyerly instinct to select a court or judge based on a belief on how that court will decide a case. But that motive is not so obvious here, *see* [67] at 10 (explaining the absence of a substantive tactical advantage from transfer), and is ultimately irrelevant because the motion fails for other reasons.